UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MONICA YOUNG, ANNA MARIE YOUNG, NIKESHA YOUNG, and CHAD LUCAS, | ) ) ) ) | |
| Appellants,[1] | ) ) | |
| v. | ) ) | Cause No.: 1:07-CV-227-TLS |
| MATTHEW SCHMUCKER, | ) ) | |
| Appellee. | ) | |

### OPINION AND ORDER

This case presents the novel issue of whether a horse and buggy qualifies as either a "motor vehicle" or a "vessel" in the Bankruptcy Code. For reasons explained below, it is neither.

### BACKGROUND

Around 5:00 a.m. on January 1, 2004, the appellee, who was eighteen at the time, was traveling alone in a horse and buggy near the intersection of Indiana State Road 37 and Notestine Road in Harlan, Indiana. He failed to stop at an intersection, and he collided with the side of a 2003 Dodge Stratus carrying the appellants. The driver of the Stratus was David Candon, who was thirty-three years old at the time and is not a party to the case. Appellant Monica Young,

---

[1] The Notice of Appeal (DE 1) states that "Plaintiff Monica Young, by counsel, . . . appeals . . . from the order of the Bankruptcy Judge." The notice's caption lists the other Plaintiffs, but the caption refers to them as "plaintiffs" rather than "appellants," and the notice itself does not state that the other Plaintiffs are appealing the bankruptcy court's order. However, a "Brief of Appellants" was filed listing the other Plaintiffs in the caption as "appellants." (DE 3). That brief begins by stating that "Appellants are appealing." In other places in the brief, only one appellant is referred to, and the accompanying appendix is titled: "Appendix to Brief of Appellant." (DE 3-2.) Given that no undue prejudice arises by considering the remaining Plaintiffs to have joined in Appellant Monica Young's appeal, and in order to ensure that the remaining Plaintiffs' appellate rights are not lost due to clerical errors, the Court interprets the Notice of Appeal to mean that all the Plaintiffs are appealing the bankruptcy court's order. *Cf. Fadayiro v. Ameriquest Mortgage Co.*, 371 F.3d 920 (7th Cir. 2004) (mere fact that notice of appeal filed in bankruptcy proceeding failed to name all of appellees did not deprive district court of jurisdiction over appeal).

who is now paralyzed from the neck down as a result of the accident, was forty-eight years old at the time and was sitting in the front passenger seat. Appellant Chad Lucas, who was fourteen years old at the time, was sitting in the rear passenger-side seat. Appellant Anna Marie Young was seven years old at the time and was sitting in the middle rear seat. Appellant Nikesha Young was eleven years old at the time and was sitting in the rear driver's-side seat. The record does not indicate the severity of the appellee's or the other appellants' injuries.[2] The appellee was charged with being a minor in possession of alcohol and failing to stop at a through-way, and the appellants allege that he was intoxicated at the time of the accident.[3]

On December 30, 2005, the appellants sued the Defendant for negligence. The appellee filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on October 9, 2006, naming the appellants as creditors, and the bankruptcy court granted him a discharge under 11 U.S.C. § 727 on January 16, 2007. The appellants filed a complaint in the bankruptcy court on January 8, 2007, asking the court to declare that the appellee's obligations to them are non-dischargeable as debts for "a willful and malicious injury" or as a result of the unlawful "operation of a motor vehicle, vessel, or aircraft [while] intoxicated." 11 U.S.C. §§ 523(a)(6), 523(a)(9). Appellant Monica Young's Proof of Claim, filed on August 17, 2007, presents an unsecured claim for $2,500,000. The appellee responded to the appellants' complaint with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) because he contends his

---

[2] The Indiana Officer's Standard Crash Report that was attached to Nationwide Mutual Insurance Company's Proof of Claim (DE 2-5) and Appellant Monica Young's Proof of Claim (DE 2-6) indicates that the appellee was ejected from the buggy and suffered "possible injury" with no visible signs of severe injury. It further indicates that all the occupants of the Stratus suffered "possible injury" or "nonincapacitating" injury, with the exception of Appellant Monica Young, whose injury was "incapacitating." Everyone in the Stratus wore a seatbelt and no one was ejected from the car.

[3] The crash report notes that a portable breath test indicated a blood-alcohol content of .06. The issue of whether the appellee was intoxicated at the time of the accident has not yet been adjudicated. (*Id.*)

actions were not willful and malicious under § 523(a)(6), and he was not operating a motor vehicle, vessel, or aircraft under § 523(a)(9). The bankruptcy court agreed with the appellee and granted the motion to dismiss.

The appellants then appealed to this Court, arguing that the bankruptcy court erred in finding that the appellee's horse and buggy is not a "motor vehicle" or a "vessel." They do not dispute the bankruptcy court's finding that the their complaint failed to adequately state a claim that the appellee's conduct was willful and malicious.

## ANALYSIS

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1), which gives district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. There is no dispute that the only issue on appeal relates to the bankruptcy court's conclusions of law, which this Court reviews *de novo*. *See In re Smith*, 286 F.3d 461, 464–65 (7th Cir. 2002).

"Generally, a bankruptcy order discharges the debts of an individual debtor. *See* 11 U.S.C. § 727(a), (b). The Bankruptcy Code, however, has excepted certain types of debts from discharge. *See* 11 U.S.C. § 523. These exceptions are confined to those plainly expressed in the Code, and are narrowly construed in favor of the debtor." *In re Platter*, 140 F.3d 676, 680 (7th Cir. 1998) (citations omitted). Congress does not allow a debtor to discharge any debt "for death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." 11 U.S.C. § 523(a)(9).

3

Breaking the § 523(a)(9) exception into its elements, the exception to applies if a creditor establishes that: (1) the debtor operated a motor vehicle, vessel, or aircraft; (2) the operation caused the creditor's death or personal injury; and (3) that operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance. Because the appellee filed a 12(b)(6) motion to dismiss based solely on the first element, the other two elements present issues for another day. This Court is thus tasked with determining whether the statute's use of the terms "motor vehicle," "vessel," and "aircraft" covers a horse and buggy. If it does, then the bankruptcy court must be reversed, and the appellants must go forward with establishing the remaining elements. If it does not, the bankruptcy court must be affirmed, and the appellee's debt to the creditors is dischargeable.

When interpreting statutes, courts must first and foremost give words their plain meaning unless doing so frustrates the overall purpose of the statutory scheme, leads to absurd results, or contravenes clearly expressed legislative intent. *See United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006). The absurd results doctrine "does not license courts to improve statutes (or rules) substantively, so that their outcomes accord more closely with judicial beliefs about how matters ought to be resolved." *Jaskolski v. Daniels*, 427 F.3d 456, 461 (7th Cir. 2005). In examining legislative intent, courts must be mindful that "[i]t is easy to announce intents and hard to enact laws; the Constitution gives force only to what is enacted. So the text is law and legislative intent a clue to the meaning of the text, rather than the text being a clue to legislative intent." *Cont'l Can Co., v. Chi. Truck Drivers*, 916 F.2d 1154, 1157–58 (7th Cir. 1990). *See also Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 707 (7th Cir. 1994) (stating that courts do not enforce the abstract purposes of the persons who wrote and voted for statutes but rather enforce

4

the rules embedded in the language, which may imperfectly track the purposes). Equitable motivations do not give courts the authority to improve upon the plain language of a statute. *In re Platter*, 140 F.3d at 68.

**A.     Is a horse and buggy a vessel?**

The bankruptcy court's entire § 523(a)(9) analysis is directed at this question. That court determined that the term "vessel," as used in the statute, "can only mean some form of watercraft or waterborne transportation." (Bankr. Ct. Order 6, DE 2-13.) The appellant argued there, and continues to argue here, that the term "vessel" has a broader meaning in the statute and instead refers to "a container or craft used to hold or transport something." (Resp. to Mot. to Dismiss 5, DE 2-11.) They argue that this definition reflects the "ordinary meaning" of the term as evidenced by the definitions of "vessel" that they have selected from various dictionaries.

The problem with the appellants' reliance on dictionary definitions of "vessel" to ascertain the plain or ordinary meaning of the term is that even if there is some support for their definition, the same dictionaries they cite support the bankruptcy court's definition as well. For example, the appellants do not say which edition of Black's Law Dictionary they rely on, but they represent that it defines "vessel" as "[a] ship, brig, sloop, or other **craft used in navigation**." (Appellants' Br. 7, DE 3) (emphasis in brief). The sixth edition defines it as "[a] ship, brig, sloop, or other craft used, or capable of being used, in navigation *on water*. *Black's Law Dictionary* 1562 (6th ed. 1990) (emphasis added). The seventh edition of Black's Law Dictionary defines "vessel" as "[a] ship, brig, sloop, or other craft used — or capable of being used — to navigate *on water*." *Black's Law Dictionary* 1557 (7th ed. 1999) (emphasis added).

5

The seventh edition was the most recent addition when Congress added the term "vessel," to the statute, but the eighth edition defines it the same as the seventh. *Black's Law Dictionary* (8th ed. 2004) (Westlaw).

The appellants also point to the Webster's II New Riverside University Dictionary, which defines "vessel" as "[a] hollow utensil used as a container, esp. for liquids." *Webster's II New Riverside Dictionary* 1284 (1984). That dictionary also defines "vessel" as "[a] craft, esp. one bigger than a rowboat, intended for navigation on water." *Id.* The appellant's brief quotes the New Oxford American Dictionary as defining a "vessel" first as "a ship or large boat," and second as "a hollow container, esp. one used to hold liquid, such as a bowl or cask." These definitions demonstrate that even if there is some support for using the appellants' definition of "vessel" as the ordinary meaning, there is at least as much, if not more, support in the dictionaries for the bankruptcy court's definition. The Court must therefore look to the words surrounding "vessel" in the statute to determine whether the appellants' or the bankruptcy court's definition supplies the most appropriate meaning given the term's statutory context.

In this statute, "vessel" is between the terms "motor vehicle" and "aircraft." The bankruptcy court appropriately referred to this construction as "nicely completing the triad of land, sea and air." (Bankr. Ct. 5, DE 2-13.) Throughout the United States Code, Congress uses this sort of triad construction quite frequently and usually seems to be referring to watercraft or other contrivances for transporting people or property across water. This is important because "[a]nother guide to interpretation is . . . the construction of similar terms in other statutes." *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000). To use a few examples, it is a crime to transport in interstate or foreign commerce a "motor vehicle, vessel, or aircraft, knowing the

6

same to have been stolen." 18 U.S.C. § 2312. A previous version of that statute only included a "motor vehicle or aircraft," but in 2006 (only one year after Congress added the term "vessel" to the Bankruptcy Code section at issue) Congress added the term "vessel." For purposes of defining that crime, Congress defined a "vessel" as "any watercraft or other contrivance used or designed for transportation or navigation on, under, or immediately above water." 18 U.S.C. § 2311. Elsewhere in the code, 8 U.S.C. § 1357(a)(3) authorizes immigration officers "to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle . . . for the purpose of patrolling the border . . . ." The Uniform Code of Military Justice makes it unlawful to operate or physically control any "vehicle, aircraft, or vessel in a reckless or wanton manner or while impaired." 10 U.S.C. § 911(a)(1).

The use of this triad construction throughout the United States Code confirms the bankruptcy court's conclusion that the term "vessel" is limited to watercraft or waterborne transportation. This is also consistent with the Dictionary Act definition. There Congress said that "[t]he word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. The appellants correctly note that this definition merely says that it *includes* watercraft or other contrivances used for transportation on water, and it does not explicitly state that it *excludes* anything. They also correctly note that the Supreme Court has said that the use of the term "include" in definitive provisions of statutes is frequently used to extend or enlarge, but the Supreme Court has also said that this principle is "[s]ubject to the effect properly to be given to context," *American Sur. Co. of New York v. Marotta*, 287 U.S. 513, 517 (1933), which is

7

consistent with the bankruptcy court's reliance on the fact that "vessel" is included between "motor vehicle" and "aircraft." The fact that the Dictionary Act definition contains the word "include" does not mean that the definition also includes every container or craft used to hold or transport something, as the appellants suggest.

The breadth of the appellants' definition poses two problems. The first is simply a matter of degree. The definition is so broad that, as the bankruptcy court observed, "[i]t would easily include not only the defendant's horse and buggy but also coffee cups, flower pots and grocery carts, all of which could cause injury and, quite conceivably be operated under the influence." (Bankr. Ct. Order 6, DE 2-13.) Yet these are not things the typical person envisions when hearing the term "vessel." More troublesome, the breadth of the appellants' definition subsumes "motor vehicle" and "aircraft," and those other two terms would add nothing to the statute. Courts generally eschew constructions of statutes that render some of the terms in the statutes superfluous. *See, e.g.*, *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) ("[W]e try to avoid interpretations of statutes that render words, or other sections, superfluous . . . .").

The term "vessel," as used in this statute, is unambiguous, at least insofar as the term is applied to a horse and buggy, and "[t]he inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (quotation marks omitted). The meaning of "vessel" in the Bankruptcy Code is the same as in Title 18. A vessel is "any watercraft or other contrivance used or designed for transportation or navigation on, under, or immediately above, water." 18 U.S.C. § 2311. The Court looks to Title 18 not because there is a shared purpose with the Bankruptcy Code, but because a review of the United States Code indicates that when the triad construction of motor

8

vehicle, vessel, and aircraft is used throughout the code, "vessel" is limited to crafts used for transportation on water.  A horse and buggy is not that.

**B.      Is a horse and buggy a motor vehicle?**

The bankruptcy court did not analyze this question because it found that "Plaintiffs acknowledge that a horse and buggy is not a motor vehicle." (Bankr. Ct. Order 4, DE 2-13.) While the appellants' brief before the bankruptcy court did not explicitly state that they were conceding that a horse and buggy is not a "motor vehicle," their entire argument was directed at establishing that a horse and buggy qualifies as a "vessel." A party may waive an argument either explicitly or implicitly if it is not raised at the proper time. *See In re Kontrick*, 295 F.3d 724, 735 (7th Cir. 2002). However, where an appellant "raises a pure issue of law on which factual development in the bankruptcy court would cast no light, the waiver [can] be forgiven." *Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996). The appellee does not argue that the appellant waived her argument that a horse and buggy is a motor vehicle, nor does he argue that he suffers any undue prejudice by having the Court consider the argument. The Court will therefore consider the appellants' argument that a horse and buggy is a "motor vehicle."

The appellee provides two definitions for "motor vehicle." Under Indiana law, a "motor vehicle" is "a vehicle that is self-propelled." Ind. Code § 9-13-2-105. While an Indiana statute can shed some light on the ordinary meaning of a term, it does not say much about what the term means in a Congressional statute. For that, the appellee's second definition is much more helpful. Congress has conditioned federal funds to the states on the states' enactment and enforcement of repeat intoxicated driver laws. 23 U.S.C. § 164. The statute conditioning these

9

funds defines "motor vehicle" as "a vehicle driven or drawn by mechanical power and manufactured primarily for use on public highways, but does not include a vehicle operated solely on a rail line or a commercial vehicle." 23 U.S.C. § 164(a)(4). This statute is helpful in discerning the definition of "motor vehicle" in the Bankruptcy Code section excepting claims arising from the intoxicated operation of a motor vehicle because both statutes provide means of protecting people from impaired drivers.

The appellants again look to various dictionaries in support of their argument that the most accurate definition of "motor vehicle" is much broader than the appellee's. They argue that there is no question that a buggy is a vehicle, and after surveying various dictionaries, they contend that "motor" refers to "any use of energy to create motion, including through the use of muscular movement." (Appellants' Br. 10, DE 3.) A horse uses energy to create motion, a buggy is a "vehicle," so the appellants conclude that a horse and buggy is a "motor vehicle." This analysis suffers the same defects as the appellants' attempt to characterize a horse and buggy as a "vessel."

First, the appellants' definition is far broader than what the term "motor vehicle" is ordinarily understood to mean. Under the appellants' analysis, a person is a motor since he or she uses energy to create motion, just as a horse does, and a skateboard or bicycle would then constitute a "motor vehicle." Yet no one would seriously argue that the everyday usage of the term "motor vehicle" includes skateboards and bicycles. The appellants' definition of "motor vehicle" also renders the terms "vessel" and "aircraft" superfluous, since without some sort of energy, those objects cannot move.

Just as with "vessel," it is again helpful to look elsewhere in the United States Code to

10

determine how best to define "motor vehicle" in the Bankruptcy Code section at issue. Congress's definition of "motor vehicle" as "a vehicle driven or drawn by mechanical power and manufactured primarily for use on public highways" reflects the plain meaning of the term. 23 U.S.C. § 164(a)(4). This definition is not entirely inconsistent with the definitions provided by the appellants' dictionaries, but it does not suffer the fatal flaw of being so broad as to be almost meaningless, which the appellants' definition does. A horse does not use mechanical power, and a horse and buggy is therefore not a "motor vehicle."

**C.     Legislative History and Absurdity Doctrine**

The appellants argue that since various dictionaries define "vessel" and "motor vehicle" in different ways, the statute is ambiguous and the Court must therefore look to legislative history to determine whether a horse and buggy qualifies as a "vessel" or a "motor vehicle." But the fact that a term can be used in various ways does not mean it is ambiguous when the term's context illuminates which particular usage is appropriate. Given the context of the statute at issue, the terms "vessel" and "motor vehicle" are not ambiguous, at least as applied to a horse and buggy. The Court then need not, and should not, look to the legislative history to interpret otherwise unambiguous terms. This is particularly true given the many pitfalls entailed in a review of legislative history.

> [T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms. Not all extrinsic materials are reliable sources of insight into legislative understandings, however, and legislative history in particular is vulnerable to two serious criticisms. First, legislative history is itself often murky, ambiguous, and contradictory. Judicial investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase,

11

>an exercise in "looking over a crowd and picking out your friends." Second, judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568–69 (2005) (citation and quotation marks omitted).

Finally, the appellants' rely on the absurdity doctrine to argue that interpreting "vessel" and "motor vehicle" as not meaning "horse and buggy" leads to the absurd result that the appellee can escape their negligence claims. While there is an argument that such a result is unjust, the appellants fail to demonstrate how the result is *absurd.* Congress did not enact a statute that made all negligence claims that arise from intoxicated behavior non-dischargeable. They limited the nondischargable claims to those that arise from the intoxicated operation of a motor vehicle, vessel, or aircraft. Under the Court's reading of the statute, the appellants are left in the same position as all other creditors whose claims arise from the negligent behavior of intoxicated debtors but are dischargeable in bankruptcy.

If this result can be said to be absurd, it is an absurdity that only Congress can remedy. Perhaps Congress should never allow any negligence claims to be discharged (or at least those caused by intoxication), or perhaps Congress should make even more claims dischargeable in order to allow more people the fresh start afforded by bankruptcy protection. This is a policy debate that is most appropriately resolved by an elected legislature, not the courts. This Court is only empowered to decide whether a horse and buggy is a "vessel" or a "motor vehicle." It is neither.

12

**ORDER**

For the foregoing reasons, the bankruptcy court is **AFFIRMED**. The Clerk is **ORDERED** to add Anna Maria Young, Nikesha Young, and Chad Lucas as appellants on the electronic docket.

SO ORDERED on July 28, 2008.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION
